

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00063-CR

---

CODY LYNN RECTOR, APPELLANT

V.

THE STATE OF TEXAS

---

On Appeal from the 47th District Court
Randall County, Texas,
Trial Court No. 26518A, Honorable Dan L. Schaap, Presiding

---

February 27, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

This is a revocation of community supervision case. Pursuant to a plea agreement, Appellant pleaded guilty to the offense of indecency with a child by contact,[1] and in February 2017 was placed on seven years deferred adjudication community supervision with conditions.

---

[1] *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (2), (d) (felony of second degree). A felony of the second degree is punishable by confinement for two to twenty years and fine not to exceed $10,000. *See id.* § 12.33.

In December 2021, Appellant pleaded "true" to the allegation that he had violated two conditions of community supervision; the trial court found he also violated two other conditions. Thereafter, the trial court sentenced Appellant to twelve years of confinement and a $2,500 fine.[2] On appeal, Appellant does not challenge the sufficiency of the evidence that he violated four conditions of community supervision. Rather, via a single issue, Appellant asserts he was denied effective assistance of counsel because his counsel failed to present evidence of how serious he suffered from mental problems, particularly with depression. We affirm.

## Background

Because the sufficiency of the evidence supporting the trial court's revocation of community supervision is not in question, we offer a truncated discussion of the evidence. Appellant agreed in February 2017 to comply with a number of conditions for deferred adjudication community supervision for the guilty plea to the offense of indecency with a child by sexual contact.[3] Shortly thereafter, Appellant struggled to comply with the conditions of supervision. After admitting to his supervision officer that he had consumed

---

[2] The trial court did not rule on Appellant's motion for new trial. Appellant's motion simply stated that the "Defendant received ineffective assistance of counsel at the hearing on the State's motion" to revoke/adjudicate without any factual explanation or affidavit attesting to the facts underlying the claim. No hearing was held. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (holding that trial court did not abuse its discretion in denying hearing on motion for new trial because defendant "failed to say why counsel's investigation was deficient, or what further investigation would have revealed").

[3] This is a lesser-included offense to Appellant's indicted offense of continuous sexual assault of a minor.

marijuana and alcohol and had contact with a minor (his son), the State in August 2017 moved to revoke Appellant's community supervision.[4]

Pursuant to another plea agreement, Appellant agreed to be placed in an Intermediate Sanction Facility (ISF) and complete a cognitive intervention track designed to treat Appellant for mental and/or emotional issues and substance abuse. In March 2018, Appellant completed the treatment program and was released from the ISF to continue the term of his community supervision.

In October 2020, the State again moved to revoke Appellant's community supervision due to an alleged failure to report to the supervision officer during the two preceding months. In March 2021, the trial court ordered a competency evaluation for Appellant due to Appellant's history of mental health issues. The competency evaluation was performed by Dr. Gina Matteson, a board-certified psychiatrist. After reviewing the history of Appellant's criminal and legal problems, his past symptoms and diagnoses, treatment history, and current evaluation based on his current symptoms/diagnosis, Dr. Matteson concluded Appellant was able to assist in his defense and was competent to stand trial.[5]

---

[4] The State's motion also alleged that Appellant had failed to pay certain fees as conditions for his supervision.

[5] The trial court placed Dr. Matteson's report under seal. *See, e.g., Bluntson v. State*, No. AP-77,067, 2021 Tex. App. LEXIS 349, at *8 n.7 (Tex. Crim. App. June 30, 2021). We note that during Appellant's revocation/adjudication hearing, the trial court took judicial notice of the contents of the clerk's record.

3

A year after initially filing its motion to revoke, in October 2021, the State filed its Third Amended Motion to Proceed to Adjudication, alleging Appellant violated several conditions of community supervision, including the following:

- Condition 1, wherein the Appellant agreed to commit no offense against the laws of Texas or any state or the United States (i.e., failure to register as a sex offender);

- Condition 5, wherein the Appellant agreed to report to the supervision officer and obey all rules and regulations of the Community Supervision and Corrections Department (i.e., failure to report from August 2020 through April 2021);

- Condition 6, wherein the Appellant agreed, among other things, to notify the supervision officer not less than 48 hours before any change in home or employment address; and

- Condition 46, wherein the Appellant agreed to attend and successfully complete sex offender treatment as recommended by the sex offender assessment.

During a hearing in December 2021, Appellant pleaded "true" to the State's allegations that he violated Conditions 5 and 46. The State proceeded to present evidence to support its allegations that Appellant also violated Conditions 1 and 6. After presentation of the evidence, the trial court found that Appellant had violated Conditions 1, 5, 6, and 46 of his terms of deferred adjudication community supervision. The trial court revoked Appellant's community supervision, found him guilty of the offense of indecency with a child by sexual contact, and sentenced him to twelve years of confinement and assessed a $2,500 fine.

Analysis

Evidence that a defendant violated a single term or condition of community supervision is sufficient to support a trial court's decision to revoke. *Garcia v. State*, 387

4

S.W.3d 20, 26 (Tex. Crim. App. 2012); *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). Here, because Appellant entered a plea of "true" to two allegations in the State's motion, "the proceeding becomes a unitary proceeding to determine the remaining issue of punishment." *Tapia v. State*, 462 S.W.3d 29, 31 n.2 (Tex. Crim. App. 2015).

On appeal, Appellant complains he was denied effective assistance of counsel because his trial counsel failed to present documentation from the Texas Panhandle Center Behavioral and Developmental Health (TPC) that he alleges would "apprise the court of the severity of Appellant's depression, the diagnosis, prognosis, or any type of treatment plan or type of medication" and show "how serious Appellant suffered from mental problems, particularly depression." According to Appellant, had these records been presented as mitigation evidence, he would have received a more lenient sentence.

To prevail on a claim that his attorney was unconstitutionally deficient in representing him, Appellant must show by a preponderance of the evidence both (1) that counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009).[6] The first *Strickland* prong requires a showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687–88; *Smith*, 286 S.W.3d at 340. When trial counsel is alleged to have failed to investigate facts of a defendant's case, the defendant must show what the investigation would have revealed that

---

[6] Failure to make the requisite showing on either prong is fatal to the claim. *Avila v. State*, Nos. 07-18-00143-CR, 07-18-00144-CR, 2019 Tex. App. LEXIS 6364, at *4 (Tex. App.—Amarillo July 14, 2019, no pet.) (citing *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011)).

5

reasonably could have changed the result in the case. *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007)). We presume that counsel gave his client reasonable professional assistance; our review of counsel's representation is highly deferential. *See Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). For an appellant to defeat the presumption of reasonable professional assistance, an allegation of ineffectiveness "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id. See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (ineffective assistance claims may not be built on retrospective speculation).

The second *Strickland* prong requires a showing of a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694; *Smith*, 286 S.W.3d at 340. As in this case, when the State alleges, and the trial court finds true, multiple violations of the defendant's terms of community supervision, the defendant must demonstrate that reasonable grounds exist to overturn each of the findings of true that led to the revocation of community supervision. *See Smith*, 286 S.W.3d at 342.

Appellant's theory on appeal appears to stem from remarks the trial court made on the record prior to sentencing, when the court addressed Appellant's argument that his failure to comply with the terms of community supervision were due to depression and other mental health issues:

> So while it is no doubt a difficult task – and I have no doubt that Mr. Rector was faced with a very difficult task given his circumstances. I am – it is not lost on me that the person he perpetrated has faced a very difficult task as well.

6

It is not an issue of retribution. It is an issue of responsibility. And counsel is aware that one thing that this Court has little patience for, and that is the failure to continue to work with probation officers to try to combat their difficulties and work through those difficulties and not bring them back to the Court.

So things like failing to report for a substantial period of time, failing to successfully complete sex offender programs, there may be excuses for doing that, there may be a feeling of the helplessness that you've talked about, but you're asking me to excuse those things and accept those excuses and give Mr. Rector a pass, and I don't think I can do that.

The question then becomes really in light of the fact that I do not intend to give him a pass on those, what do I do?

The crimes that are committed are – they're – they're heinous. They affect somebody for a long, long time. That's what I heard today, and that's what I've heard, of course, in the past.

We disagree with Appellant's claim that his attorney's performance fell below an objective standard of reasonableness. Notably, Appellant fails to show whether TPC's records actually contain favorable evidence that reasonably could have changed the result in the case. *See Stokes*, 298 S.W.3d at 432; *Cooks*, 240 S.W.3d at 912. Evidence of Appellant's depression was front and center throughout the entire hearing, but Appellant's use (and purported reason for use) of TPC and related services was mixed.

As an example, Troy Timmons, the licensed professional counselor and sex offender treatment provider, testified about Appellant's "significant" depression, and noted he observed an improvement in Appellant's mood and energy levels when Appellant took his medication and participated in TPC services. However, Appellant also continued to attempt to minimize his committing the offense of indecency with a child by sexual contact. Appellant eventually stopped attending sessions with Timmons. Appellant attributed this lack of contact to spotty mobile phone reception, but Timmons expressed the concern that Appellant was not taking the treatment seriously: "the difficulty I see is his amenability

7

to treatment." Timmons also observed Appellant was "kind of in and out with compliance" with taking his medication.

Jennifer Watson, the probation officer assigned to Appellant, testified that during the course of her supervision, Appellant continued to minimize his criminal conduct: saying "he didn't do what the victim claimed he did . . . He basically takes no responsibility for it." Appellant did not meet with probation officers despite their remote availability during the COVID-19 pandemic.[7] Appellant also ceased receiving services from TPC for some time.[8] When a phone call was placed to TPC's staff, Watson learned Appellant had not been honest about what he was on community supervision for.

The appellate record does not contain TPC's documents, and we do not speculate about what they say. If Appellant intends to suggest that TPC's records would show Appellant was taking responsibility for his crime and seeking treatment to better himself, we point out that other record evidence belies that position. If Appellant is suggesting that TPC records would explain why Appellant failed to comply with the terms of community service, we refer to the other evidence regarding Appellant's refusal to accept responsibility for his actions, for they offer an alternative explanation for why Appellant dropped out. Without regard to what the records say, we hold that Appellant has failed to show that further investigation by trial counsel would have revealed any additional

---

[7] Appellant agreed with his counsel's question that he did not meet with probation because he felt "like a hamster in a wheel."

[8] She also testified that Appellant dropped out of attending sex offender treatment sessions because he complained he didn't fit in with the other patients undergoing treatment. Appellant testified he quit because it was "kind of hard going into those classes and hearing different stories" that put mental pictures in his mind.

mitigation evidence. Under these circumstances, Appellant fails to satisfy *Strickland's* first prong.

Moreover, Appellant also fails under the second *Strickland* prong because there is no record evidence establishing a reasonable probability that but for counsel's failure to seek and admit TPC's records to show his level of depression, the result of the proceeding would have been different. As indicated, no one doubted that Appellant suffered from severe depression. Appellant's mental health issues were already before the court due to a competency evaluation that contained a history of his past symptoms and diagnoses. When his counsel presented argument at closing, he asked that when "you compound the mental issues Cody suffers from" along with other factors, the trial court should grant "mercy" and allow Appellant to remain on community supervision.

Appellant overlooks the fact that he had previously violated the terms of community supervision, and that then, the trial court, in a show of mercy, decided against revocation in favor of treatment in ISF. There is no indication that further investigation by trial counsel into TPC's records would reveal anything other than additional, cumulative mitigating evidence already presented to the court. *Tuft v. State*, 940 S.W.2d 114, 121 (Tex. App.— Tyler 1996, pet. ref'd) (counsel is not ineffective for failing to present evidence that is merely cumulative of other evidence presented at trial). Appellant failed to establish there was a reasonable probability that the result of the proceeding would have been different if TPC's records had been introduced.

Viewing the evidence in a light most favorable to the trial court's ruling, we find that Appellant has not shown either deficient performance by trial counsel or there is a

reasonable probability that such investigation or mitigating evidence would have produced a different result.  As such, Appellant has failed to meet his burden under both prongs of *Strickland*.  Appellant's issue is overruled.

Conclusion

The trial court's judgment is affirmed.


Lawrence M. Doss
Justice


Do not publish.